35867, 35868.  GEORGIA NORTHERN RY. CO. *et al. v.*
HATHCOCK, by Next Friend; and *vice versa.*

DECIDED NOVEMBER 3, 1955—REHEARING DENIED DECEMBER 1, 1955.

*Peacock, Perry & Walters, H. H. Perry, Jr., Moore, Gibson, DeLoache & Gardner*, for plaintiffs in error.

*H. P. Burt, Burt & Burt,* contra.

TOWNSEND, J. ■ ■ Allegations of negligence against the defendant to the effect that the railroad car was not equipped with a light in the manner required by the interstate Commerce Commission, and that the engineer failed to maintain a constant lookout ahead as the train neared the crossing, which amounted to a lack of ordinary care under the circumstances, were not subject to special demurrer on the ground that they showed no causal relationship between such acts and the plaintiff's injuries. These allegations were reasonably specific and were, with the other acts of negligence stated, alleged to be "the direct and proximate cause of plaintiff's injuries." See, in this connection, *City of Rome* v. *Justice,* 40 *Ga. App.* 196 (149 S. E. 88) ; *Central of Ga. Ry. Co.* v. *Hartley,* 25 *Ga. App.* 110 (103 S. E. 259).

■ A demurrer was interposed to the allegation that the defendants were negligent "in failing to have said train under control and stop same before entering said highway, when co-defendant (the engineer) had sufficient knowledge that the said Smoak was unaware of said train approaching the crossing" on the ground that it is not alleged how or wherein the engineer had such knowledge or how he acquired it. An allegation that a fact is known to another is ordinarily not demurrable. If the overruling·

of this special demurrer was error, in that the expression "sufficient knowledge" is ambiguous, or is a conclusion without facts to support it, an examination of the record shows no harm resulting therefrom which would justify a reversal of this case on this ground.

■ Special grounds 4, 10, 12 and 13 of the amended motion for a new trial complain that the regulation of the Interstate Commerce Commission dealt with in (a), supra, was admitted in evidence, and of the charge of the court and submission to the jury of the question of whether or not the light on the defendant's train met the specifications of the regulation, on the ground that any deficiency in the illumination did not, under the evidence, in any way contribute to the collision. There was testimony of witnesses, and also the physical evidence of a light similar to that used on the train in question, from which the jury might have found that the light used was less than half as bright as that required. Since at the time of the collision the automobile in which the plaintiff was riding was moving in a northerly direction, and the train in a northwesterly direction, with buildings and woods obstructing the vision between them, as well as impaired atmospheric visibility, it was within the province of the jury to determine whether, had the light on the train been as required, either the engineer or the driver of the automobile would have been put on notice of the emergency in time to avoid the collision. Accordingly, these grounds are without merit.

■ It is contended in special ground 5 of the amended motion for a new trial that the admission in evidence of a rule of the defendant railroad that the bell must be kept ringing and proper signals given "while switching over street crossings" was error for the reason there was no evidence of a switching operation at the time of the collision. Since the engineer admitted that the rule was not complied with, and since another witness, a railroad employee, testified that he was "fixing to get out and go across the street and throw the switch" when the train stopped, it was also a jury question as to whether there was a switching operation within the meaning of this company rule, and its admission was proper.

■ Counsel for the defendants in argument to the jury stated without objection that the railroad was a small railroad and it

would be unduly burdensome and expensive to equip every crossing with automatic signals. Counsel for the plaintiff in his concluding argument stated: "Gentlemen, they could comply with the law; they could put the proper equipment on these trains for they are really coining money in their operations and you needn't doubt that." Counsel for defendants then objected as follows: "We object to the argument on the ground that it is highly improper and on the further ground that it has nothing to do with this case, and we ask the court to so instruct the jury." Counsel was reminded of his previous remarks and replied, "It is a little, small railroad and we ask Your Honor to instruct the jury at this time that that has nothing to do with the case." The court took no action in the matter.

Code § 81-1009 provides as follows: "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the counsel, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the plaintiff's attorney is the offender." In the present case, it would have been better practice for the court to reprimand counsel for both sides, they being equally at fault in injecting into the case an issue not supported by evidence, and to instruct the jury to disregard both the size of the railroad and its earning capacity. This is especially true since counsel for the defendant, at the very moment of repeating his objection, incorporated into his objection a repetition of the original objectionable matter to which counsel for the plaintiff was, equally erroneously, attempting to reply. While one impropriety cannot excuse another, and there is no such thing as equation of errors, the court feels that in this case the latitude allowed to each side was such that no harmful effect resulted to either. Accordingly, a reversal will not be granted on this ground.

■ Special ground 7 assigns error on the entire charge of the court, consisting of 27 typewritten pages, as being argumentative and unnecessarily repetitive. "Where exception is taken to a long extract from the charge of the court, and there is no specification of the error therein the exception will not be considered, unless all of the charge so excepted to is erroneous. If any of it

is sound law, an affirmance will result." *Cobb* v. *State*, 76 *Ga.* 664. Since the entire charge is not completely argumentative or completely repetitious, this assignment of error is too broad for consideration by this court.

■ Special ground 8 assigns error on the following: "Under our law it is not the primary duty of plaintiff, as a guest, to keep a lookout as that is the duty of the driver, but the plaintiff must exercise ordinary care for his own safety. . . I further charge you that the exercise of ordinary care on the part of a guest in an automobile to another does not require supervision of the driver, unless the guest has actual notice, or the circumstances are such as would put any reasonably prudent person on notice of impending danger. What particular circumstances will call into action the function of a back seat driver, in the exercise of ordinary care for his own protection, can not be stated by any arbitrary rule. A guest may be engaged in conversation, or in reading, or he may be asleep and still be in the exercise of ordinary care, provided there has been nothing which did or which should have put the guest, as an ordinarily prudent person, upon notice that vigilance on his part was necessary for his (or her) safety." The exception to this charge is that it is argumentative and erroneous as a matter of law in that the court undertook to instruct the jury what conduct would or would not constitute ordinary care on the part of the plaintiff. That it would be erroneous to instruct the jury as to what acts on the part of a guest would constitute lack of ordinary care see *Tift* v. *Jones*, 77 *Ga.* 181 (6) (3 S. E. 399); *Johnson* v. *Wofford Oil Co.*, 42 *Ga. App.* 647 (157 S. E. 349). In *Wade* v. *Roberts*, 89 *Ga. App.* 607 (2) (80 S. E. 2d 728) it was held that a charge that if the jury found the guest plaintiff lacking in ordinary care "with respect to anything he did or failed to do as to warning the driver or cautioning him or failing to leave the car or get him to stop or otherwise" was not subject to this objection, since it is proper to charge that the jury must decide this issue, and the court did not instruct them that any particular act or omission would constitute negligence, but left this to the jury. The charge excepted to comes in part from the decision of this court in *Hathcock* v. *Georgia Northern Ry. Co.*, supra, and in part from *Russell* v. *Bayne*, 45 *Ga. App.* 55 (163 S. E. 290). It leaves for jury determination whether this plaintiff did any act which

amounted to lack of ordinary care for his own safety. It is, accordingly, not erroneous as a matter of law. Considered with other excerpts from the charge on the same subject of approximately equal length, relating to situations under which the plaintiff as a guest could not recover, the charge on this subject was not argumentative in favor of the plaintiff. This ground is without merit.

■ The court charged that the plaintiff contended that it was negligence for the defendant to have failed to install an automatic signaling device or to have placed a guard at the crossing, and that whether or not this was negligence "would be a question of fact to be determined by the jury under all the facts and circumstances existing at the time and place, keeping in mind the location, the degree of travel and other relevant factors disclosed by the evidence." Error is assigned in special ground 11 on the ground that there was not sufficient evidence in the case to permit the submission to the jury of whether such acts were negligence. We do not agree with counsel for the plaintiff in error's statement in their brief that "the only justification for holding a railroad negligent in failing to have automatic signals or provide a flagman would be that there was such an unusual quantity of traffic thereon as to call for such extraordinary measures" and no such rule of law has been called to our attention. It is admitted that there were no such signals or guard at this crossing. Demurrers to the allegations of negligence on this ground were overruled. It is accordingly obvious that whether or not such conduct, at this time and place, was a negligent act constituted a jury question, and the court properly so charged.

■ Special ground 9 of the amended motion for a new trial is not argued and is treated as abandoned. Special ground 14 complains of failure to give a requested charge, and will be treated with the general grounds. The charge requested was as follows: "If the driver of the automobile was familiar with the railroad crossing, he was bound to anticipate that a train might be on *or entering upon* the crossing, and if you find that as the train *approached and entered* upon the crossing it was in full view of the driver when he was at such distance from the crossing that had he been operating his car at a reasonable rate of speed he could have stopped before striking the train and that his vision

and view of the train was not impaired by fog, dust, or other atmospheric conditions, but that either he was not maintaining a lookout for the train and did not see it or was operating his car at an unreasonable rate of speed so that as a result thereof he could not bring it to a stop, then I charge you that in such circumstances the negligence of the driver was the proximate cause of the collision and that the plaintiff would not be entitled to recover irrespective of any negligence on the part of the defendant such as a failure to ring the bell or blow the whistle." The general grounds, as argued by counsel, insist that there was not sufficient evidence of negligence to support the verdict, particularly in view of the ruling in *Stains* v. *Georgia Northern Ry.*, 88 *Ga. App.* 6 (75 S. E. 2d 833), a decision of this court holding that the petition of another guest occupant of the car in question was subject to general demurrer, it being contended that although the petition in this case was held not so subject, the proof when the case went to trial showed facts which, according to the *Stains* case, would preclude recovery. Dealing with the latter issue first, the proof in this case was not the same as the allegations in the *Stains* case. There the petition was construed to allege that the driver of the automobile had an unobstructed view of the train "blocking the right half of the highway" for a distance of 150 feet, a sufficient distance for him to stop according to other allegations of the petition, and that "his negligence in proceeding without checking his speed until he was 40 feet from the train, while the obstruction of the highway by the train on the crossing should have been apparent to him at a distance of 150 feet therefrom, was the proximate cause of the plaintiff's injuries."

It appears from the evidence that the driver of the automobile in which the plaintiff was a guest passenger had driven south over the road in question a short time before, had turned around and was returning to the town of Bridgeboro; that there were 3 sets of tracks, within the city limits; that the driver crossed the first set, going 45 to 50 miles an hour; that the distance between these and the tracks on which the train was approaching was 177 feet; that he did not see the train until 50 feet from it; that at the moment of impact he was traveling 40 to 45 miles an hour; that these tracks and the road cross in a sort of "X"; that vision between them was obscured by an old depot close to the road be-

tween the two sets of tracks and by vegetation; that neither the driver nor the engineer saw the other until almost the moment of impact; that the engineer saw an automobile approaching from the other side and had slowed down to 5 to 10 miles an hour and threw his engine out of gear, and could have stopped if he had observed the automobile in 5 or 6 feet; that he did not observe it but was entering the crossing, and the impact crushed the entire front end of the automobile and hit just behind the cab of the train, about 9 feet from the front; that the train was derailed and stopped 11 feet 6 inches into the road and entirely on the plaintiff's side thereof; that the headlight of the train was far below the standard required so that, although the car driver would never have been looking directly into it, due to the road angle, the reflected light was less than it should have been; that the engineer could have seen the automobile, which had its lights burning, at least at the same distance of 50 feet in which the driver saw the train, and could have stopped, within 5 or 6 feet after seeing it, or before entering the intersection, but did not do so. Whether or not the engineer rang the bell, as to which the evidence was in dispute, he did not do so continuously, since he had to change gears and the position of the equipment was such that he could not do that and ring the bell at the same time. When the driver saw the train his testimony was that it had not yet reached the highway. Evidence was disputed as to whether there was sufficient dust and haze to impair vision, but the driver of the automobile testified that it did not materially impair his vision; that the operator of the train was a substitute engineer and that it was normal proceeding to flag this crossing but in this instance that procedure was not followed. It further appears that the train was less than half-way across the intersection at the moment of impact and that a car approaching from the opposite direction, with its lights shining toward the automobile in which the plaintiff was riding, evidenced to the approaching car the fact that the crossing was not totally obstructed (a material distinction from the *Stains* case, where the petition was construed to allege that the highway was so obstructed.)

Under this evidence, the request to charge was properly refused. There was no evidence that the train was obstructing the entire crossing, and no case has been cited to this court which constrains

us to hold that the driver of an automobile is bound to anticipate that the train may be *entering on* the crossing so as to put a duty on such driver under all circumstances to stop and give the train a right of way. The rights of railroads to lay their tracks across public streets and use them is mutual and reciprocal with the right of the public to the use of such streets. *Louisville & Nashville R. Co.* v. *Ellis*, 54 *Ga. App.* 783 (189 S. E. 559) ; *A. C. L. R. Co.* v. *Hansford*, 85 *Ga. App.* 507 (2) (69 S. E. 2d 681). Whether the train or the automobile has the right of way at a crossing depends on general rules of law regarding the use of intersections, and not merely the duty of one driver to anticipate that another may be about to make use thereof. Where, as in *Brinson* v. *Davis*, 32 *Ga. App.* 37 (122 S. E. 643) the train is standing stationary upon the crossing, and there is nothing to preclude the driver of the car from seeing it there, his negligence in running head-on into it precludes recovery. See also *Anderson* v. *Collins & Glennville Ry. Co.*, 47 *Ga. App.* 722 (171 S. E. 384), *Carroll* v. *Georgia Power Co.*, 47 *Ga. App.* 518 (2) (171 S. E. 208), and *A. C. L. R. Co.* v. *Marshall*, 89 *Ga. App.* 740 (81 S. E. 2d 228), all of which are guest cases in which the drivers of automobiles ran into parked trains. Where the train completely blocks the intersection, as where its engine has gone by, the same situation results and the same rule applies. *Pollard* v. *Clifton*, 62 *Ga. App.* 573 (9 S. E. 2d 782), and *Central of Georgia Ry. Co.* v. *Adams*, 39 *Ga. App.* 577 (147 S. E. 802), are cases where such a state of facts existed, and the driver of the automobile was the plaintiff. The rule was applied in a guest case in *Central of Ga. Ry. Co.* v. *Shepard*, 37 *Ga. App.* 643 (141 S. E. 415). This court finds no case where it has been held that the driver of the automobile in which the plaintiff guest was riding was the sole proximate cause of the injuries received under circumstances where neither the automobile nor the train was *occupying* the intersection, but both were attempting to *enter* it at the same time, nor do we conceive this to be the law. The request to charge undertook to state that the driver of the car must anticipate that a train might *enter upon* the intersection, and then in effect stated that, if the driver failed to see him and stop, his negligence would be the sole proximate cause of the injuries received. In *Tenn., Ala. & Ga. R. Co.* v. *Neely*, 27 *Ga. App.* 491, 493 (108 S. E. 629) it was held that a

request in part as follows: "If the evidence shows that the deceased could have seen or heard the train in time to avoid danger had he looked or listened, and he drove upon the track in front of the moving train, then this was such negligence on his part as would prevent recovery", was defective in that "unless the act complained of as negligence is negligence per se, the trial judge cannot instruct the jury as to what facts would constitute negligence." See to the same effect *Atlanta & W. P. R. Co.* v. *Wise*, 190 *Ga.* 254, 257 (9 S. E. 2d 63). The court properly refused to give the requested charge.

We have shown that the jury was authorized to find the defendant negligent in failing to have proper lights, in failing to properly signal the crossing, and in failing to keep a lookout so as to see the approaching car where the undisputed evidence was that the engineer could have seen it in time to stop. We have shown that the evidence does not require a verdict for the defendant under the decision in the *Stains* case. The same applies to *Evans* v. *Georgia Northern R. Co.*, 78 *Ga. App.* 709 (52 S. E. 2d 28) where the train was proceeding across and totally blocking the intersection; *Atlantic Coast Line R. Co.* v. *Coxwell*, (case No. 35640, post) and other cases above cited, as well as the following cases in which the plaintiff driver was suing for injuries to himself (or the family, in the case of a death action, the deceased being the driver of the automobile): *Tidwell* v. *Atlanta, B. & C. Ry.*, 42 *Ga. App.* 744 (157 S. E. 535); *Baker* v. *Atlantic Coast Line R. Co.*, 52 *Ga. App.* 624 (184 S. E. 381); *Burnett* v. *Louisville & Nashville Ry. Co.*, 58 *Ga. App.* 64 (197 S. E. 663); *Bassett* v. *Callaway*, 72 *Ga. App.* 97 (33 S. E. 2d 112). We feel this case is most nearly controlled by the opinion of Judge Jenkins in *McGinnis* v. *Shaw*, 46 *Ga. App.* 248 (167 S. E. 533), which case involved a situation where the defendant's train was backing into the crossing, and where it was held that a suit might be maintained against both the host driver for gross negligence and the railroad for ordinary negligence. The petition in that case failed to allege that the host driver was unfamiliar with the crossing, but on the other hand he instructed the plaintiff to look in one direction and himself failed to look in the other, showing that he did know he was approaching a crossing, and the petition further alleged that the driver speeded up upon approach-

ing the crossing. Acts of negligence were also charged against the railroad. The court, in holding the action maintainable, said, "Even though voluntary, intentional concert is lacking, if the separate and independent acts of negligence of several combine naturally and directly to produce a single injury, they may be sued jointly, despite the fact that the injury might not have been sustained had only one of the acts of negligence occurred. . . Thus, where two concurrent causes naturally operate in causing an injury, there can be recovery against both or either one of the responsible parties." This effectually answers the argument that where the driver of an automobile knows he is approaching a crossing it follows as a matter of law that his failure to stop is the *sole* proximate cause of the injuries. In *Central of Georgia Ry. Co. v. Barnett, 35 Ga. App.* 528 (134 S. E. 126), a death action where the deceased was the driver of the automobile which collided with an approaching train, it was held that, "Questions of negligence, including such questions of comparative negligence, questions as to what negligence constitutes the proximate cause of the injury, and *questions as to whether the plaintiff could have avoided the* consequences of defendant's negligence by the exercise of ordinary diligence, are such as lie peculiarly within the province of the jury to determine." (Italics ours.) At this point the writer would like to point out that while he is in agreement with the principle of law that where the negligence of one defendant, antecedent to the injury, is static, and plainly visible to all, it is not a proximate cause of injuries caused by another defendant whose independent intervening act in injuring the plaintiff constitutes an efficient independent cause of injury, he is of the opinion that in many of the cases cited above where the driver of the automobile was the plaintiff in the action, or the decedent for whom recovery was sought under the death statutes, the facts of the cases showed the plaintiff not entitled to recover because, under the provisions of Code § 105-603, the allegations or the evidence showed that he did not exercise ordinary care for his own safety, and not because it was made to appear that the driver's negligence was the *sole proximate cause.* Where the driver is the plaintiff, the result is the same. Where, however, the guest is plaintiff, and the driver's negligence is not imputable to such guest, the guest is not precluded from recovery because

the driver failed to exercise ordinary care to avoid the conse-
quences of the other defendant's negligence after it was or should
have been known to him, but the guest is precluded if the driver's
negligence, in this or any other respect, constitutes the sole proxi-
mate cause of the injury. In *Georgia Power Co. v. Blum,* 80 *Ga.
App.* 618 (57 S. E. 2d 18) there is a discussion of this subject,
and the court there stated that the provisions of this Code section
do not apply "where a third party not himself at fault sues joint
tortfeasors" and of course this is equally true where he sues one
tortfeasor and the evidence shows that the negligence of such de-
fendant and another combined to cause the injuries. That such
distinction exists, and is applicable to intersection collisions be-
tween automobiles and trains, is also pointed out in *Central of
Ga. Ry. Co. v. Burton,* 33 *Ga. App.* 199, 202 (125 S. E. 868). In
*Rape v. Tenn., Ala. & Georgia Ry.,* 47 *Ga. App.* 96 (169 S. E.
764), a guest case where the driver hit a stationary coal car, this
court held that, on the question of proximate cause, every case of
this sort must be determined upon its own facts. The question is
phrased in *Mann v. Central of Ga. Ry. Co.,* 43 *Ga. App.* 708, 713
(160 S. E. 131), not a guest case, as follows: "It is said, however,
that he [the driver] ought to have anticipated the approach or
presence of a train upon this crossing, *with which he was familiar,*
and that the attendant physical condition constituted no sufficient
excuse for his failure to do so. The question is, does the petition
show that the plaintiff exercised so little care as to require a rul-
ing, as a matter of law, that his negligence equalled or exceeded
the negligence of the defendant, or existed in such degree as to
bar recovery?" And, to quote again from *McGinnis v. Shaw,*
supra: "The mere fact that the injury would not have been sus-
tained had only one of the acts of negligence occurred will not of
itself operate to define and limit the other act as constituting the
proximate cause, for if both acts of negligence contributed directly
and concurrently to bringing about the injury, they together will
constitute the proximate cause. The determination of questions
as to negligence lies peculiarly within the province of the jury,
and in the exercise of this function the question as to what con-
stitutes the proximate cause of an injury complained of may be
directly involved as one of the essential elements and disputed
issues in the ascertainment of what negligence, as well as whose
negligence the injury is properly attributable to."

The verdict was authorized by the evidence, and the special assignments of error are without merit. The trial court did not err in overruling the special demurrers or the motion for a new trial as amended.

*Judgment affirmed on main bill of exceptions. Cross-bill dismissed. Gardner, P. J., and Carlisle, J., concur.*