Port Royal & Western Carolina Railway Co. *v.* Davis.

1. Where an employee of a railroad company sues for personal injuries, a request to charge the jury to the effect that the omission of the plaintiff to perform a particular duty, or that the plaintiff in attempting to discharge the duty committed an error of judgment resulting in his injury, would defeat a recovery, the request leaving out of consideration entirely the question as to whether with respect to either proposition the plaintiff was negligent, was properly refused.

2. While, in the abstract, it is the duty of a railroad company to carefully select and superintend its operatives, machinery, appliances and appointments of every character used in its business, yet where the failure to properly select or superintend its operatives is not made a ground of complaint in the declaration, and the negligence imputed to the company is confined to the improper selection of machinery and appliances, it is error, at the request of the plaintiff's counsel, to give in charge the abstract principle of law first above stated, without limiting its application to the subject complained of in the declaration.

3. Where rules are prescribed or regulations adopted for the government of employees in and about the discharge of their duties, it is

the duty of the employer to give notice of their existence and so to promulgate them as to afford to the employee a reasonable opportunity of ascertaining their terms. Knowledge either express or such as the law will imply, without reference to the means by which it is imparted, binds the employee to compliance. Therefore, a request to charge to the effect that if the rules be *written* or *printed*, each employee should either be furnished with a copy or advised as to where he can read or hear them read, and which leaves out of consideration all other means of acquiring knowledge, should have been denied; and the court in giving such instruction erred.

4. In the trial of an action for injuries alleged to have been occasioned to an employee of a railroad company in coupling cars, it was error to charge that, if the employee was instructed by the conductor to couple the cars without a knife or stick and when about to enter upon the discharge of that duty the conductor was in a position to see that he had no knife or stick and allowed him to proceed without them, and the employee was then and there injured, he was not negligent in not having such knife or stick, and was entitled to recover if injured without fault on his part and by the negligence and carelessness of the agents of the company.

5. Courts should not permit counsel in the argument of one cause to refer to positions and arguments of opposing counsel in another, with a view (or which might have the effect) to prejudice, disparage or discredit the sincerity of his position assumed in the case being tried; but such matters are to a great extent within the discretion of the presiding judge, and unless in the exercise thereof prejudicial error has been committed, this court will not interfere.

January 14, 1895.

Action for damages. Before Judge EVE. City court of Richmond county. August term, 1894.

Davis sued the railroad company for damages resulting from an injury received while engaged as a trainhand in the service of the company and while coupling cars, whereby his right hand was caught and crushed between the bumpers. He obtained a verdict, and defendant's motion for a new trial was overruled. The declaration alleges, that on February 13, 1891, he was instructed to couple certain cars, and in carrying out the order, his hand was caught by reason of the link used in coupling being too short and the too rapid back-

ing of the engine; that he was entirely free from fault, and the accident resulted from the failure of other servants of the company to provide links of sufficient length to permit of safe coupling, and to exercise proper care in the handling of the engine; that he had been in defendant's service but a few days, and had no knowledge or intimation that the place at which the coupling was ordered to be done was any more hazardous or dangerous by reason of being on a curve; that he had no knowledge that one of the bumpers was higher than the other, or that the link was so short as to make coupling dangerous and impossible, until after the accident occurred; that he was furnished with no instrument to aid him in perfecting the coupling, nor with any rule-book or direction prescribing the manner in which coupling should be done, but he was ordered by the conductor simply to do the coupling, without any direction, warning or instruction as to how it should best be done, the conductor knowing at the time that plaintiff had no instrument to aid him in the coupling; etc.  The opinion states fully the grounds for new trial ruled on in the second, third and fourth divisions.  The grounds referred to in the first and fifth divisions are:

(1) Error in refusing to charge, as requested: "If it was the duty of the plaintiff to observe the link and the bumpers and he failed to do so, he cannot recover for any injury received by reason of such failure; or, if he observed them and formed the opinion that they were safe, he was acting for the company, and if he made a mistake in this opinion, he cannot recover for the consequences of such mistake."

(5) In concluding argument, plaintiff's counsel said, he would ask the jury, in the same words of eloquence once used by eminent counsel now representing the defendant, wherein counsel had said, " for every sigh, for every groan, for every pain he had suffered, he should

have compensation equivalent to his agony." Counsel for defendant objected to plaintiff's attorney reading law to the jury. Counsel disclaimed reading law to the jury, but said he was simply quoting other's eloquence, just as he would read or quote from the Bible or Shakespeare or any worthy author. The court permitted the counsel to conclude the quotation, which he did by saying, that these were to be put on one side of the scale, and on the other money; money, until both in even balance hung and the jury felt that he had been fully and adequately remunerated. Counsel for defendant then and there objected to the same as being irrelevant, improper, illegal and tending to prejudice the jury.

Ganahl & Ganahl, for plaintiff in error.

C. H. Cohen and J. R. Lamar, *contra.*

Atkinson, Justice.

1. In a suit by an injured employee against a railroad company for injuries resulting from alleged negligence of the company, where it is sought to be shown by way of defense that the plaintiff is not entitled to recover, because of his own negligence in the premises, it is not error for the presiding judge to refuse to charge the jury, in substance, that if a particular duty was imposed upon the plaintiff and he failed to perform that duty, or that if the plaintiff in attempting to discharge the duty committed an error of judgment which resulted in his injury, he could not recover. We do not think this is a correct rule. The omission to perform a duty which defeats a recovery, or the error of judgment which produces a like result, must be such an omission as must, in some sense at least, be attributable to negligence upon the part of the servant suing; and where the charge of the court leaves entirely out of consideration whether or not the plaintiff, with respect to these duties, was in any sense negligent,

it withdraws from the jury the very question which the law submits for their consideration, and undertakes in advance to adjudicate this question of fact. The omission to perform a duty imposed might amount to negligence. It is difficult to suppose a case where a man could omit to perform an imposed duty and at the same time be entirely free from fault; but it is not only possible, but entirely probable, that a man in the performance of a duty imposed upon him may exercise the greatest care, and still, because of an error of judgment in the performance of the duty, he might without fault upon his part be injured. But the charge requested states to the jury that if the plaintiff either omitted to perform a particular duty, or that if, in attempting to discharge the duty, he committed an error of judgment resulting in his injury, without any reference to how careful and diligent he was in making the attempt, still he could not recover. The vice of the instruction requested was, leaving out of it altogether the question as to whether the plaintiff, in the omission of the duty or in the forming of his judgment which turned out to be erroneous, was in any way guilty of negligence.

2. The declaration in the case contained no count alleging, as a substantive cause of the injury complained of, that the agents and servants of the defendant who were coemployees with the plaintiff, were not properly supervised and superintended. The whole gist of plaintiff's action was, that because of certain defective appliances with which he was required to perform his duty, he was injured. The court, however, was requested to charge, and did charge at the instance of plaintiff's counsel, that it was the duty of the road to carefully select and superintend its operatives, its machinery, appliances and appointments of every sort used in its business. While, as an abstract proposition of law, this is a correct rule, there being no complaint in

the declaration that a failure of the railroad company carefully to superintend its operatives was in any sense a contributing cause to the injury, it was error for the court to give in charge this rule of law, without limiting it in its application to the particular subject complained of in the declaration.   To charge the jury that if the plaintiff was himself without fault, he might recover, provided the agents of the company were at fault in this matter, and then to charge the jury that it was the duty of the company carefully to superintend its operatives, would imply that the plaintiff's right to recover might be predicated upon the failure of the company to perform this latter duty.   The evidence might have demonstrated that the plaintiff was himself free from fault; it might have demonstrated that the appliances alleged by him as being defective and to which the declaration attributes his injury, were in every respect perfect.   Yet to say to the jury that the railroad company was bound to carefully select and superintend its operatives, might have the effect to mislead them in the application of that general proposition to this particular case, because they might have found that in this respect the company was negligent, but a finding upon that would not authorize a recovery upon the declaration; and thus the jury might, under an erroneous conception of their duty in the premises, misguided by this instruction of the court, have been induced to return a verdict founded upon an improper supervision of the defendant's officers and operatives, rather than because of defects in the machinery or appliances.   It is well enough for the court carefully to understand the plaintiff's contentions as stated in the declaration, and confine the evidence and instructions to the issues which are presented by the declaration and the pleas.   If this is done, the jury would have no inducement to wander into the field of speculation, nor would there be in the instructions anything suggestive of a power upon their part to do so.

3. The court properly charged the jury generally, with respect to the promulgation of rules of the railroad company, that "the rules of corporations is the law which governs them, and their employees and officers; but no employee is bound by any rule which has not been promulgated to him, or to which his attention has not been called. Actual knowledge of a rule would avoid a necessity of any formality in its promulgation. So before any employee of a railroad company could be governed or be bound by the rules of the corporation, you must be satisfied the rules were within his knowledge, were brought home to him, or there were furnished to him an opportunity to learn the rules, or he had actual knowledge of the rules." This was a fair statement of the true rule upon this subject, as heretofore announced by this court. But when, at the request of the plaintiff's counsel, the court, in addition to this, charged, "If the rules are written or printed, each employee should either be furnished with a copy or informed where to apply, at least where he might call and hear them read, or read them himself," inasmuch as the evidence in the case shows that the rules of the company which were insisted upon as binding upon this plaintiff were printed rules, the effect of this charge was to instruct the jury that although ordinarily other means might be employed in imparting to persons to be affected thereby notice of the rules of the company, yet where the rules are written or printed, it was the duty of the company either to furnish the plaintiff with a copy of these printed rules or tell him where he could hear them read; otherwise, he would not be bound. This is more than the law requires. If by oral tradition he have knowledge derived even from his coemployees of the existence and terms of such rules, he is bound to conform his conduct thereto, whether he have either a copy of the rules themselves, or have had an opportunity to

read them or hear them read. The latter is one means of promulgating the rules, and probably the most effective; but it is not the only means by which, being received, notice thereof will bind the employee.

4. Exception is taken to the following charge of the court: " If you believe the plaintiff was instructed by the conductor to couple the cars without a knife or stick, and that when he was about to enter upon the discharge of this duty, the conductor was in a position to see that he had no knife nor stick in his hand to perform the coupling with, and he allowed him to proceed without it, and the plaintiff was then and there injured, then I charge you that the plaintiff was not negligent in not having such knife or stick, and he is entitled to recover if he is injured without fault on his part and by the negligence and carelessness of the agents of the company." A rule of the company had been introduced in evidence, which required the use of a knife or stick in making couplings. This charge in the first place assumes that there was evidence submitted to the jury which might tend to show that the conductor instructed the plaintiff to couple the cars without a knife or a stick; whereas, while it may be found under the evidence that the conductor instructed the plaintiff, he not having a knife or stick, to couple the cars, there is no evidence from which the jury could find an affirmative instruction from the conductor to the plaintiff to couple the cars without using a knife or stick. This charge, for this reason, was erroneous. The second error in the charge is, that if the conductor saw the plaintiff about to make the coupling without the use of a knife or stick and neglected to compel him to desist, without giving him affirmative instructions at all upon the subject, the conductor's negligence would so neutralize the effect of any negligence of the plaintiff upon his own part as wholly to acquit him of negligence. It would be a

strange rule of law which would justify the negligence of an employee in the performance of his duties, by simply showing that another employee engaged about the same business was likewise negligent. The apparent duty of guardianship by the superior officer over the conduct of his coemployee, and making him responsible for the injuries of the coemployee without reference to the negligence of the latter, which is set up and established by this instruction of the court, has no warrant in the law. A positive instruction by one in authority to his inferior to perform a particular service in a particular way, is one thing; and the omission to give an instruction when none such was necessary, is entirely a different thing. For the court to say that the alleged negligence of this conductor would acquit this plaintiff of negligence, was to withdraw from the consideration of the jury altogether the question as to whether or not the plaintiff was not himself negligent in obeying such instructions, assuming even that they were given.

5. It seems that in the progress of this case and during the argument, the counsel for the plaintiff referred to an argument made by counsel for the defendant years ago in the trial of a damage suit of this character, in which the counsel for the defendant in this case occupied in that the position of counsel for the plaintiff. The speech referred to has become embalmed in part in the printed reports of this court, and is recognized as one of surpassing eloquence. With a pathos characteristic of the great advocate who delivered it, he appealed to all the emotions of the jury to compensate his client for the injury that he had sustained; to estimate in cold cash the physical pain and torture and the mental anguish that he must endure. And this extract plaintiff's counsel was proceeding to read to the jury. Counsel for the defendant objected upon the ground that this was improper. We think, too, this was an improper

practice, but not of itself such as, in the absence of other substantial error, would justify the grant of a new trial. Counsel in their relations with each other and before the courts are many times, in the course of a long professional career, required to take positions which do not seem to the casual observer to be at all times entirely consistent the one with the other. The man who represents the plaintiff to-day may in a similar case, or one involving similar features, to-morrow represent the defendant; and it would be manifestly unfair and unjust if the court permitted the argument in one case to be quoted by counsel in the other, with a view either to prejudice or to disparage or to discredit the position assumed in the case being tried. It is hardly probable that such a practice could serve any useful purpose, and its effect doubtless would be to cause unnecessary attrition among the members of the bar and produce bad feeling, where none but the kindliest sentiment should prevail. There should be no room in the legal profession for the indulgence of personal jealousies or resentments; and the lawyer is the last man in the world who should permit himself, by word or deed, to sting the sensibilities or wound the feelings of a brother lawyer. The control of these matters, however, is largely within the discretion of the trial court, and we shall assume that at the proper time, upon proper necessity, courts administer proper correctives.        *Judgment reversed.*