**Mrs. Elaine JOHNSON,**
**Plaintiff-Appellant,**

v.

**UNITED PARCEL SERVICE et al.,**
**Defendants-Appellees.**

**Otis JOHNSON, Plaintiff-Appellant,**

v.

**UNITED PARCEL SERVICE et al.,**
**Defendants-Appellees.**

**Nos. 77–3028, 77–3029.**

United States Court of Appeals,
Fifth Circuit.

April 30, 1980.

A. Russell Blank, Atlanta, Ga., for plaintiffs-appellants.

Ben Kingree, Atlanta, Ga., for defendants-appellees.

Before TUTTLE, VANCE and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge.

This diversity action resulted from a collision between a van driven by Otis Johnson (plaintiff-appellant) and a tractor-trailer truck driven by George H. Dees, Jr. (defendant-appellee), an employee of United Parcel Service (defendant-appellee). The trial court granted defendants' motion for a directed verdict on the ground that under Georgia law Johnson failed to exercise ordinary care in driving at such a speed that he could not stop within the range of his headlights. We conclude that the trial judge erred in holding that *as a matter of law* appellant was barred from recovery because he drove his vehicle at such a speed that he could not stop his vehicle within the range of his headlights. Accordingly, we reverse.

On March 30, 1975, at approximately 12:30 a. m., appellant was driving south on Fulton Industrial Boulevard (the "highway") when appellee Dees drove his truck out from Frederick Drive across the southbound lanes of Fulton Industrial Boulevard in order to turn left and proceed north on the highway. Dees was unable immediately to make his turn because of the approach of a northbound car. Before Dees was able to clear the southbound lanes of the highway, appellant's auto struck the left rear portion of the trailer being pulled by appellee.

Appellants contend that the accident was caused by appellee's negligence in failing to: (1) stop at a stop sign on Frederick Drive, (2) yield the right of way to appellant who was so close to the intersection of the highway and Frederick Drive as to constitute an immediate hazard, and (3) clear the southbound lanes of the highway.

Appellee claims that the vehicle did stop at the stop sign and that the sole proximate cause of the accident was appellant's alleged failure to avoid the collision by taking evasive measures or stopping his vehicle prior to striking the rear of appellee's trailer.

In this diversity case, the trial court correctly looked to the substantive law of Georgia to determine the duties of the driver. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, the court misread the applicable Georgia law. Relying on *Gross v. Southern Railway Company*, 446 F.2d 1057 (5th Cir. 1971), a case arising out of Georgia involving a collision between a car and a moving train, the trial court granted defendants' motion for a directed verdict. The court concluded that, as a matter of Georgia law, a driver must be able to stop his vehicle within the range of his headlights;[1] since appellant was apparently unable to do so, his failure in this regard constituted the sole proximate cause of his injuries.[2]

---

1. Georgia statutorily requires automobiles to be equipped with high beams that will reveal persons and vehicles at distances of at least 350 feet and low beams that will reveal persons and vehicles at distances of at least 100 feet. Ga. Code Ann. § 68–1713 (1975).

2. More specifically, the trial court stated:
   [I]f a driver of a car could have seen the train within the frame of the statutory headlight requirements, no recovery can be had either by the driver or the guest passenger because his negligence is the sole proximate cause of the collision.

   [I]t is the common sense rule in Georgia as elsewhere that no warning need be given to a person of prudence of an object plainly visible within the statutory headlight requirement. (T. 306–307)

The court's reliance upon *Gross* is misplaced.[3] *Gross* does not establish a per se headlight requirement; rather it identified the driver's inability to stop within the range of his headlights as one factor among others that in combination rendered him negligent. As appellees admit in their brief, the Georgia cases indicate that a plaintiff is not barred from recovery *as a matter of law* solely for driving at a rate of speed such that he could not stop within the range of his headlights. For instance, in *Padgett v. Central of Georgia Railway Company*, 95 Ga.App. 96, 96 S.E.2d 658 (1957), a vehicle collided with a standing freight train blocking the highway. Citing *Savannah & Atlanta Ry. Co. v. Newsome*, 90 Ga.App. 390, 83 S.E.2d 80 (1954), as authority both for the proposition that one is not always required to drive so that he may stop within the range of his headlights, and that the lights of an automobile may under some conditions hit an obstacle ahead such as a boxcar without illuminating it, the court in *Padgett* held that the manner in which the plaintiff alleged he was using the highway did not constitute negligence sufficient to bar recovery as a matter of law.

*Padgett* further determined that whether the plaintiff failed to exercise ordinary care to avoid the negligence of defendant as required by Ga.Code Ann. § 105–603 is usually a jury question.[4]

Moreover, *Gross* is distinguishable from the present case in that the law governing a car-train collision is somewhat different from the applicable law in collisions between two motor vehicles. Railroads in Georgia are under a statutory duty to: (1) equip trains with proper lights for use after dark;[5] (2) require that horns or bells be sounded as trains approach a crossing;[6] (3) erect standard railroad crossing signs to designate public highways across railroads;[7] and (4) erect and maintain reflectorized railroad crossbuck signs at each crossing.[8] The purpose of this statutory duty is to warn approaching motorists of the presence of a train.[9] If a motorist

---

The trial court concluded:
  . . . It is his [Appellant Johnson's] duty to have the car under such control that he may discover any other obstacle in his immediate path in time to enable him to stop within the range of his lights. (T. 315–316)

**3.** In *Gross* the Fifth Circuit stated:
  In our opinion the sole proximate cause of the accident unfortunately was the negligence of the driver Gross, who had ample time if he had been paying proper attention to the road ahead, and if he had his automobile under proper control so as to be able to stop within the range of his vision as illuminated by his headlights, *to have observed the highway warning signs and the moving train in the crossing*, and to have stopped his vehicle rather than run it into the 30th car of the train.
446 F.2d at 1065 (emphasis added).

**4.** The court stated:
  If the plaintiff could have stopped within the distance that the negligence of the defendant was or ought in the exercise of ordinary care to have been apparent to him, he cannot recover. *Central of Ga. Ry. Co. v. Shepard*, 37 Ga.App. 643, 141 S.E. 415; *Fraser v. Hunter*, 42 Ga.App. 329, 156 S.E. 268. This is ordinarily a jury question. *Reed v. South-*

*ern Ry. Co.*, 37 Ga.App. 550(4), 140 S.E. 921. No two negligence cases are identical; each must sit on its own bottom, and questions of negligence, proximate cause, and contributory negligence must in general be left for jury determination. This case falls within the general rule.
95 Ga.App. at 99, 96 S.E.2d at 660.

**5.** Ga.Code Ann. §§ 94- 505.1, 505.2 (1978).

**6.** Ga.Code Ann. §§ 94 506, 507 (1978).

**7.** Ga.Code Ann. § 94 ·511 (1978).

**8.** Ga.Code Ann. § 94 518 (1978).

**9.** Appellee cites *Seaboard Coast Line Ry. Co. v. Sheffield*, 127 Ga.App. 580, 194 S.E.2d 484 (1972), for the proposition that no warning need be given to a person of an object plainly visible within the range of the statutory headlight requirement. However, what the court actually held in that case was that the railroad had no duty to give any *further* warning of the presence of a train beyond those required by law. Since there were railroad crossbuck signs on the approaches and only minutes before the train had been blowing its horn and ringing its bells, no further warning was required.

ignores these warnings or negligently fails to notice them, the railroad is not held liable. Such statutes are inapplicable to collisions involving motor vehicles.

Thus, in *Gross* we held that although the railroad might have been negligent in failing to erect a standard crossbuck sign and allegedly failing to blow its whistle, its negligence was not the proximate cause of the accident since "there was ample warning to the driver from highway signs as he approached the crossing . . ." *Gross,* 446 F.2d at 1062.[10] Because Gross ignored these warning signs or negligently failed to notice them, the sole proximate cause of the accident was his negligence.

In an intersectional motor vehicle collision, as the present case illustrates, the situation frequently is quite different. Johnson had no advance warning that the highway directly ahead would be blocked by a tractor-trailer truck. It was a cloudy night. There were no warning signs, no whistles blowing; there was only the glow of the trailer's running lights, which Johnson testified he did not see until immediately before the collision. The fact that Johnson was apparently unable to stop within the range of his headlights is in and of itself not dispositive of the negligence issue. It was only one factor to be considered by the jury.

Because the district court based its directed verdict on an erroneous legal conclusion, we REVERSE and REMAND.

---

10. These signs were reflector-type luminescent signs and included one which made specific reference to the upcoming railroad crossing and another which was a stop sign.